IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERNDISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| RICHARD DAVIS,<br>individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>LIBERTY FSB,<br><br>        Defendant. | Case No.<br><br><br><br><br>Filed Electronically<br><br>Jury Demanded |

## CLASS ACTION COMPLAINT – JURY DEMANDED

Comes now Richard Davis, ("Plaintiff") on behalf of himself and all others similarly situated and alleges as follows:

## INTRODUCTION

1. Plaintiff Richard Davis brings this action individually and on behalf of all others similarly situated against Liberty FSB("Defendant"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., (the "ADA") and its implementing regulations; the Texas Human Resource Code, Tex. Hum. Res. Code Ann. § 121.001 et seq. (the "THRC"); and the Texas Architectural Barrier Act, Tex. Gov't Code Ch. 469 (previously Texas Revised Civil Statutes, Article 9102 et seq.) (the"TABA").

2. Plaintiff is a blind individual.  He brings this civil rights class action against Defendant for failing to design, construct, and/or own or operate banking facilities that are fully accessible to, and independently usable by, blind people.  Specifically, Defendant's ATMs are not fully accessible to, and independently usable by, blind people and do not meet the express requirements of the ADA, THRC and TABA that are calculated to make ATMs accessible to

visually impaired individuals.  Therefore, on behalf of a class of similarly situated individuals, Plaintiff seeks a declaration that Defendant's ATMs violate federal law as described and an injunction requiring Defendant to update or replace its ATMs so that they are fully accessible to, and independently usable by, blind individuals. Further, as noted below, Plaintiff seeks statutory damages as permitted by Texas law.  Plaintiff also requests that once Defendant is fully in compliance with the requirements of the ADA, the THRC and the TABA, the Court retain jurisdiction for a period of time to be determined to ensure that Defendant has adopted and is following an institutional policy that will, in fact, cause Defendant to remain in compliance with the law.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

3.      On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.

4.      The ADA broadly protects the rights of individuals with disabilities with respect toemployment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

5.      Title III of the ADA prohibits discrimination in the activities of places of public accommodation and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities.  42 U.S.C. § 12181-89.

6.      On July 26, 1991, the Department of Justice ("DOJ") issued rules implementing Title III of the ADA, which are codified at 28 CFR Part 36.[1]

---

[1]    The DOJ is the administrative agency charged by Congress with implementing the requirements of the ADA.

**CLASS ACTION COMPLAINT**                                                                                                   **Page 2**

7.       Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 CFR part 36) contains the ADA standards for Accessible Design (1991 Standards), which were based upon the Americans with Disabilities Act Accessibility Guidelines (1991 ADAAG) published by the Access Board on the same date.[2]

8.       In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

9.       In 1999, based largely on the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise its ADA and ABA Accessibility Guidelines.

10.       The Access Board issued final publication of revisions to the 1991 ADAAG on July 23, 2004 ("2004 ADAAG").

---

[2]       The Access Board was established by section 502 of the Rehabilitation Act of 1973.  29 U.S.C. §792.  The Board consists of 13 public members appointed by the President, the majority of whom must be individuals with disabilities, and the heads of the 12 Federal departments and agencies specified by statute, including the heads of the Department of Justice and the Department of Transportation.  Originally, the Access Board was established to develop and maintain accessibility guidelines for facilities designed, constructed, altered, or leased with Federal dollars under the Architectural Barriers Act of 1968.  42 U.S.C. § 4151 *et seq.* The passage of the ADA expanded the Access Board's responsibilities.

The ADA requires the Access Board to "issue minimum guidelines . . . to ensure that buildings, facilities, rail passenger cars, and vehicles are accessible, in terms of architecture and design, transportation, and communication, to individuals with disabilities."  42 U.S.C. 12204. The ADA requires the DOJ to issue regulations that include enforceable accessibility standards applicable to facilities subject to Title III that are consistent with the "minimum guidelines" issued by the Access Board, 42 U.S.C. § 12134(c), 12186(c), but vests with the Attorney General sole responsibility for the promulgation of those standards that fall within the DOJ's jurisdiction and enforcement of the regulations.

The ADA also requires the DOJ to develop regulations with respect to existing facilities subject to Title III.

**CLASS ACTION COMPLAINT**                                                                                                       **Page 3**

11. On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG.

12. On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

13. The long-contemplated revisions to the 1991 ADAAG culminated with the DOJ's issuance of The 2010 Standards for Accessible Design ("2010 Standards"). The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards consist of the 2004 ADAAG and the requirements contained in subpart D of 28 CFR part 36.[3]

### THE ADA HAS LONG REQUIRED THAT FINANCIAL INSTITUTIONS THAT OWN, OPERATE, CONTROL AND/OR LEASE ATMS PROVIDE ATMS THAT ARE FULLY ACCESSIBLE AND INDEPENDENTLY USABLE BY BLIND PEOPLE

14. Since the enactment of the ADA in 1991, banks and financial institutions which provide banking services through ATMs have been required to ensure that all banking services available at the ATM are fully accessible to, and independently usable by, individuals who are blind. The 1991 DOJ Standards required that "instructions and all information for use shall be made accessible to and independently usable by persons with vision impairments." 28 CFR part 36, App. A. section 4.34.4. Defendant has never been in compliance with this mandate.

15. The 2004 ADAAG adopted very specific guidelines calculated to ensure that ATM banking services were, in fact, fully accessible to, and independently usable by, individuals who are blind.

---

[3] Though the Effective Date of the 2010 Standards was March 15, 2011, the communication elements of Chapter 7 of the Standards—which frame Plaintiff's allegations in this case—did not become effective until March 15, 2012, at which time the 2010 Standards became enforceable through civil actions by private plaintiffs.

**CLASS ACTION COMPLAINT**                                                                 **Page 4**

16. Section 220.1 of the 2004 ADAAGs stated that "where automatic teller machines . . . are provided, at least one of each type provided at each location shall comply with Section 707."

17. In turn, Section 707 of the 2004 ADAAGs delineated very precise accessibility guidelines for ATMs, including guidelines calculated to ensure that ATMs are fully accessible to, and independently usable by, visually impaired individuals. These guidelines included, *inter alia*, the following elements: ATMs shall be speech enabled (i.e. talking ATMs)—Section 707.5; input controls shall be tactilely discernible—Section 707.6; function keys shall have specific tactile symbols—Section 707.6.3.2; Braille instructions shall be provided for initiating the speech mode.

18. As noted, the 2010 Standards adopt the 2004 ADAAG. The communication elements of the 2010 Standards are set forth at Chapter 7-- including, in relevant part, the elements which are expressly calculated to make ATMs fully accessible to, and independently usable by, visually impaired individuals. The Chapter 7 communication elements became fully effective on March 15, 2012.[4]

19. Defendant owns, operates, controls and/or leases a place of public accommodation.

20. Defendant's ATMs are not fully accessible to, and independently usable by, blind individuals. Some of Defendant's ATMs do not include functional voice guidance.

---

[4] The DOJ has consistently taken the position that the communication-related elements of ATMs are auxiliary aids and services, rather than structural elements. *See* 28 CFR part 36, app. B at 728 (2009). Thus, the 2010 Standards do not provide a safe-harbor provision for implementation of these requirements unless compliance would cause an "undue hardship" upon a public accommodation.

**CLASS ACTION COMPLAINT** Page 5

21. Defendant does not have an institutional policy that is reasonably calculated to ensure that its ATMs be fully accessible to, and independently usable by, visually impaired individuals.

### THE TEXAS ARCHITECTURAL BARRIER ACT AND THE TEXAS ACCESSIBILITY STANDARDS

22. Texas passed the Texas Architectural Barrier Act in an effort "to further the policy of this state to encourage and promote the rehabilitation of persons with disabilities and to eliminate, to the extent possible, unnecessary barriers encountered by persons with disabilities whose ability to…achieve maximum personal independence is needlessly restricted." Tex. Gov't Code, Sec. 469.001.

23. Under the TABA, the Texas Commission of Licensing and Regulation (the "Commission") was charged with the task of adopting "standards, specifications, and other rules…that are consistent with standards, specifications, and other rules adopted under federal law." Tex. Gov't Code, Sec. 469.052.

24. The Texas Accessibility Standards (the "TAS"), adopted under the TABA, apply to, *inter alia*, "a privately funded building or facility that is defined as a 'public accommodation' by Section 301, Americans with Disabilities Act of 1990 (42 U.S.C. Section 12181), and its subsequent amendments…" Tex. Gov't Code, Sec. 469.003(4).

25. The Commission, in their November 2011 meeting, approved the 2012 TAS with an effective date of March 15, 2012.

26. Chapter 7: Communication Elements and Features of the 2012 TAS tracks almost verbatim the accessibility guidelines for ATMs set forth in the federal 2010 Standards. Like the federal 2010 Standards, the provisions of Chapter 7 include, *inter alia*, the following elements: ATMs shall be speech enabled (i.e. talking ATMs)—Section 707.5; input controls shall be

tactilely discernible—Section 707.6; function keys shall have specific tactile symbols—Section 707.6.3.2; Braille instructions shall be provided for initiating the speech mode.

## JURISDICTION AND VENUE

27. This Court has federal question jurisdiction over the ADA claims asserted herein pursuant to 28 U.S.C. §1331 and 42 U.S.C. § 12188.

28. This Court has supplemental jurisdiction over the state laws claims asserted herein pursuant to 28 U.S.C. § 1367(a).

29. Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

30. Venue in this judicial district is proper under 28 U.S.C. §1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PARTIES

31. Plaintiff, Richard Davis, is and, at all times relevant hereto, was a resident of Texas. Plaintiff is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2); the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*; the THRC, Tex. Hum. Res. Code Ann. § 121.002(4); and, the TABA, Tex. Gov't Code, Sec. 469.002(4).

32. Defendant, Liberty FSB, is a federal savings bank organized under the laws of the United States and is headquartered at 401 West Broadway, Enid, Oklahoma 73701. Defendant is a public accommodation pursuant to 42 U.S.C. 12181(7)(F) and a public facility pursuant to Tex. Hum. Res. Code Ann. § 121.002(5) which offers banking services through its ATMs.

## VIOLATIONS AT ISSUE

33. After March 15, 2012, Plaintiff visited Defendant's ATM located at 7000 Preston Road, Frisco, Texas, with a driver.

34. At the time of the visit, the ATM was not fully accessible to, and independently usable by, blind people, in that the voice-guidance feature on the machine was not operational. Based upon an investigation performed on Plaintiff's behalf, Plaintiff alleges that other machines in Defendant's ATM network have voice-guidance features that are not operational. In addition, machines in Defendant's ATM network (including the ATM visited by Plaintiff) have no Braille instructions for initiating the speech mode.

35. As a result of Defendant's non-compliance with the ADA, Plaintiff and class members, unlike persons without visual impairments, cannot independently use certain of Defendant's ATMs.

36. Defendant's non-compliance threatens blind people with the loss of their private banking information. Blind people who wish to use certain of Defendant's ATMs have no choice but to repeatedly reveal their private PINs to others to complete an ATM banking transaction.

37. In violation of Section 707.5 of the 2010 Standards and the 2012 TAS, certain of Defendant's ATMs are not, and have never been, speech enabled, or they have a speech-enabling feature that is not functional.

38. In violation of Section 707.6.3.2 of the 2010 Standards and the 2012 TAS, at certain of Defendant's ATMs, the input keys do not have the correct tactile symbol.

39. Though Defendant has centralized policies regarding the management and operation of its ATMs, Defendant has never had a plan or policy that is reasonably calculated to make all of its ATMs fully accessible to, and independently usable by, blind people.

40. Plaintiff resides within approximately seventeen (17) miles of the location of Defendant's ATM described above.

41. Plaintiff has actual knowledge of the fact that certain of Defendant's ATMs lack the mandatory elements required by the 2010 Standards and the 2012 TAS to make the ATMs fully accessible to, and independently usable by, blind people.

42. When Plaintiff visited Defendant's ATM, he had in his possession an ATM card, and headphones that are compatible with the 2010 Standards and the 2012 TAS, and wanted the opportunity to avail himself of the banking services offered through Defendant's ATM.

43. As a blind individual, Plaintiff has a keen interest in whether public accommodations that offer banking services through ATMs are fully accessible to, and independently usable by, the blind, specifically including an interest in ensuring that ATMs possess all of the features required by the 2010 Standards and the 2012 TAS.

44. Plaintiff intends to return to certain of Defendant's ATMs to ascertain whether they remain in violation of the ADA.

45. Based upon his interest in the subject matter of this lawsuit, Plaintiff has actual knowledge that even when public accommodations which offer ATM banking services attempt to provide speech guidance at their ATMs, the speech guidance features frequently do not function as required by the 2010 Standards and the 2012 TAS.

46. For example, many ATMs have headphone jacks that do not function properly, or at all, and that therefore do not support the speech enabling that is required by the 2010

Standards and the 2012 TAS (as described above, Defendant has many machines in its ATM network with voice guidance features that are not operational, including the ATM visited by Plaintiff and described above).

47. In contrast to an architectural barrier at a public accommodation, wherein a remediation of the barrier to cause compliance with the ADA provides a permanent or long-term solution, the addition of, or repair to, a speech enabling function provided at the ATM of a public accommodation requires periodic monitoring to confirm, not only that the public accommodation is in compliance in the first instance, but also that the public accommodation remains in compliance.

48. Without injunctive relief, Plaintiff will continue to be unable to independently use Defendant's ATM in violation of his rights under the ADA.[5]

## CLASS ALLEGATIONS

49. Plaintiff brings this action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all legally blind individuals who have attempted to access Defendant's ATMs (the "Rule 23(b)(3) Class").

50. Plaintiff also brings this action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of himself and all legally blind individuals who have attempted to access, or will attempt to access, Defendant's ATMs (the "Rule 23(b)(2) Class").

51. The classes described above are so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court.

---

[5] Plaintiff intends to visit Defendant's ATMs periodically to monitor whether Defendant is in compliance with the ADA's requirements calculated to confirm that ATMs are fully accessible to, and independently usable by, blind people.

**CLASS ACTION COMPLAINT**

52. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the classes. The claims of the Plaintiff and members of the classes are based on the same legal theories and arise from the same unlawful conduct.

53. <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the classes in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's facilities and/or services due to Defendant's failure to make its ATMs fully accessible and independently usable as above described.

54. The questions of fact and law common to the classes include but are not limited to the following:

   a. Whether Defendant is a "public accommodation" under the ADA;

   b. Whether Defendant is a "public facility" under the THRC;

   c. Whether Defendant's conduct in failing to make its ATMs fully accessible and independently usable as above described violated the ADA, 42 U.S.C. § 12101 et seq.;

   d. Whether Defendant's conduct in failing to make its ATMs fully accessible and independently usable as above described violated the THRC, Tex. Hum. Res. Code Ann. § 121.001 et seq.; and,

   e. Whether Plaintiff and members of the classes are entitled to damages, costs and/or attorneys' fees for Defendant's acts and conduct.

55. <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the members of the classes. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the

classes and has no interests antagonistic to the members of the classes.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation.

56. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Rule 23(b)(2) Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Rule 23(b)(2) Class as a whole.

57. Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3).  Those questions of law or fact (identified above) that are common to the classes predominate over any questions affecting only individual Rule 23(b)(3) Class members and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

58. <u>Superiority:</u>  A class action is superior to other available means for the fair and efficient adjudication of the claims of the Rule 23(b)(3) Class.  While the aggregate damages which may be awarded to the members of the Rule 23(b)(3) Class are likely to be substantial, the damages suffered by the individual members of the Rule 23(b)(3) Class are relatively small.  As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Rule 23(b)(3) Class to individually seek redress for the wrongs done to them.  Plaintiff does not know of any other litigation concerning this controversy already commenced by or against any member of the Rule 23(b)(3) Class.  The likelihood of the individual members of the class prosecuting separate claims is remote.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues.  In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the

parties and the court system, and would protect the rights of each member of the Rule 23(b)(3) Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

### FIRST CAUSE OF ACTION
### For Violation Of The ADA, 42 U.S.C. § 12101 et seq.
### (On Behalf of Plaintiff and the Members of the Rule 23(b)(2) Class)

59. The allegations contained in the previous paragraphs are incorporated by reference.

60. Defendant has discriminated against Plaintiff and the Rule 23(b)(2) Class in that it has failed to make its ATM banking services fully accessible to, and independently usable by, individuals who are blind in violation of 42 U.S.C. § 12182(a) and Section 707 of the 2010 Standards, as described above.

61. Defendant has discriminated against Plaintiff and the Rule 23(b)(2) Class in that it has failed to provide auxiliary aids and services calculated to make its ATM banking services fully accessible to, and independently usable by, individuals who are blind in violation of 42 U.S.C. § 12182(b)(2)(A)(iii) and Section 707 of the 2010 Standards, as described above. Providing the auxiliary aids and services mandated by the ADA and Section 707 of the 2010 Standards would neither fundamentally alter the nature of Defendant's banking services nor result in an undue burden to Defendant.

62. Defendant's conduct is ongoing, and, given that Defendant has not complied with the ADA's requirements that public accommodations make ATM services fully accessible to, and independently usable by, blind individuals, notwithstanding that those requirements have been in place since 1991, Plaintiff invokes his statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees.

63. Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period of one year after the Defendant certifies that it is fully in compliance with the mandatory requirements of the ADA that are discussed above, Defendant's non-compliance with the ADA's requirements that its ATMs be fully accessible to, and independently usable, by blind people is likely to recur.

### SECOND CAUSE OF ACTION
### For Violation Of The THRC, Tex. Hum. Res. Code Ann. § 121.001 et seq.
### (On Behalf of Plaintiff and the Members of the Rule 23(b)(3) Class)

64. The allegations contained in the previous paragraphs are incorporated by reference.

65. "Public facilities includes…any other place of public accommodation, amusement, convenience, or resort to which the general public or any classification of persons from the general public is regularly, normally, or customarily invited." Tex. Hum. Res. Code Ann. § 121.002(5).

66. Defendant owns or operates a public facility as defined in § 121.002(5).

67. The THRC states "[p]ersons with disabilities have the same right as the able-bodied to the full use and enjoyment of any public facility in the state." Tex. Hum. Res. Code Ann. § 121.003(a).

68. "The discrimination prohibited by [the THRC] includes…a failure to…comply with Article 9102, Revised Statutes."[6] Tex. Hum. Res. Code Ann. § 121.003(d)(1). Thus, a violation of the TABA – and the 2012 TAS requirements adopted under the TABA – is a violation of the Tex. Hum. Res. Code § 121.003(d)(1).

---

[6] As noted above, Article 9102 has been recodified as Chapter 469 of the Texas Government Code.

**CLASS ACTION COMPLAINT**                                                                 **Page 14**

69.  In addition, the failure to "provide auxiliary aids and services necessary to allow the full use and enjoyment of the public facility" results in discrimination violative of the Tex. Hum. Res. Code Ann. § 121.003(d)(3).

70.  Defendant has discriminated against Plaintiff and the Rule 23(b)(3) Class in that it has denied individuals who are blind the full use and enjoyment of its ATM banking services in violation of the THRC and the 2012 TAS.

71.  Defendant has discriminated against Plaintiff and the Rule 23(b)(3) Class in that it has failed to provide auxiliary aids and services necessary to allow the full use and enjoyment of its ATM banking services by individuals who are blind in violation of the THRC.

72.  Plaintiff and the Rule 23(b)(3) Class have been damaged and will continue to be damaged by this discrimination as more fully set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the classes, prays for:

a.  A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action to ensure that its ATMs were fully accessible to, and independently usable by, blind individuals;

b.  A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to take all steps necessary to brings its ATMs into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the ATMs are fully accessible to, and independently usable by, blind individuals, specifically including all of the communications elements set forth in Section 707 of the 2010 Standards, and which further directs that the Court shall retain jurisdiction for a period of one year after Defendant certifies that all of its ATMs are fully in compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain in compliance with the law;

c.  An Order certifying the classes proposed by Plaintiff, and naming Plaintiff as a class representative and appointing his counsel as class counsel;

    d.      An award to Plaintiff and each member of the proposed Rule 23(b)(3) Class in the amount of at least $100.00 for violation of their civil liberties as provided for under Tex. Hum. Res. Code § 121.004(b);

    e.      Payment of costs of suit;

    f.      Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

    g.      The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: July 5, 2012                                     Respectfully Submitted,

/s/ R. Bruce Carlson_____
R. Bruce Carlson (PA56657)
bcarlson@carlsonlynch.com
CARLSON LYNCH LTD
PNC Park
115 Federal Plaza, Suite 210
Pittsburgh, PA 15212
www.carlsonlynch.com
(p) 412.322.9243
(f) 412.231.0246

Emil Lippe, Jr.
TX State Bar No. 12398300
emil@texaslaw.com
LIPPE & ASSOCIATES
600 N. Pearl Street, Suite S2460
South Tower, Plaza of the Americas
Dallas, Texas 75201
(p) 214.855.1850
(f) 214.720.6074